**STATE ex rel. DALE et al., State Bar Com'rs, v. CURD.**

No. 9978—Opinion Filed May 27, 1919.

(Syllabus by the Court.)

1. **Attorney and Client—Revocation of Attorney's License—Statute.**

Under the third subdivision of section 252, Rev. Laws 1910, the license of an attorney at law may be revoked for the willful violation of any of the duties of an attorney or counselor.

2. **Same—Disbarment—Evidence.**

The evidence in the record examined, and found to fully support the referee's findings of fact and conclusions of law that the respondent has willfully violated his duties as an attorney and counselor at law, and is guilty of unethical and unprofessional conduct in the practice of his profession, for which his license to practice law should be revoked, and the referee's report is therefore approved, and the license of the respondent to practice law is revoked.

Original proceedings by the state of Oklahoma, on relation of Frank Dale and others, as the State Bar Commissioners of the state of Oklahoma, for the disbarment of Edward Curd. Respondent disbarred.

E. L. Fulton, for relators.

N. A. Gibson and W. J. Crump, for respondent.

RAINEY, J. This disbarment proceeding was commenced in this court by the State Bar Commission against Edward Curd, a legally licensed attorney under the laws of this state, and on the 25th day of June, 1918, the Honorable P. D. Brewer was appointed by this court as referee to hear the evidence and to report his findings of fact and conclusions of law based thereon. On March 5, 1919, the honorable referee filed his report, containing the following findings of fact, conclusions of law, and recommendation:

"Findings of Fact.

"1 Your referee finds that at all the times mentioned in the petition for disbarment and in this report Edward Curd, the respondent. was and now is a highly intelligent and educated man and a duly and legally licensed attorney at law, with authority to practice law in this and the other courts of the state of Oklahoma.

"2. Your referee finds that at all the times mentioned in said petition for disbarment and in this report the said respondent was employed and acting as the attorney for the guardian of Sarah Rector, a minor Creek freedwoman, and for her estate, which was a very large one, and as such attorney conducted and handled all of the legal business in which said estate, or the guardian as such, was interested.

"3. Your referee finds that, while said respondent was acting as such attorney for the guardian and the estate of the said Sarah Rector, the said estate, under orders of the county court of Muskogee county, Oklahoma, made numerous investments of the surplus funds belonging to said estate by purchasing farm lands and city property; that the proceedings to accomplish these investments and through which such purchases were made, under petitions to and orders of the said county court, were all prepared and conducted by the said respondent in the name of the guardian of said estate; said guardian acting in all of them under the advice and with the legal assistance of the said respondent.

"4. Your referee finds that the said respondent from time to time petitioned for and was allowed by the county court of Muskogee county, Oklahoma, out of the funds of said estate, attorney's fees and compensation for all the work done by him for such guardian and such estate, including the work performed in conducting the proceedings for the purchase of real estate, with the funds of such minor and hereinafter more specifically referred to.

"5. Your referee finds that during the year 1916 (the exact date being a little uncertain) E. A. Hill, who was a real estate broker and at the time was representing Sleeper & Scott, negotiated with this respondent, as the attorney for said guardian and said estate, regarding the sale to the estate of certain real property; that during such negotiations this respondent informed Hill that there would be a great deal of work necessary in getting the matter through, and that he would require a fee or compensation from Mr. Hill therefor; that the said Hill finally agreed with the respondent that, if the sale went through, he would pay said respondent two-thirds of the amount of commissions or brokerage that he (Hill) would obtain through the transaction; that the respondent prepared and filed for the guardian the petition for such purchase and investment, and conducted the proceedings looking thereto, and obtained all the necessary orders and the purchase was made. Thereafter Hill, in keeping with his agreement so to do, paid the respondent $1,462.67, which was two-thirds of the amount of the commissions growing out of the transaction coming to the said Hill. This sum was taken to respond-

ent's office in cash, placed in an envelope, and left on respondent's desk, who at the time was not in his office. After the investigation which finally led to these charges was instituted, the respondent paid back to Hill this sum of money, suggesting at the time that he say nothing about it.

"6. Your referee finds that in 1917 (the exact date being uncertain) one W. G. McGoffin, a real estate broker, took up with the respondent, as the attorney for said guardian and said estate, negotiations for the sale to the said guardian for said estate of certain lands belonging to one Robert Fike, and that at the suggestions of the respondent the said broker agreed to pay respondent one-half of his brokerage to become due in the transaction if the sale went through. The respondent, acting as attorney for the guardian and for said estate, conducted the proceedings and obtained the order for the investment of the minor's funds by purchasing the said real estate for $57,000. Said McGoffin's brokerage out of the transaction was $7,000, out of which he paid this respondent $3,500, as he had agreed to do. This sum was paid respondent by the broker in cash, and according to his best memory in $100 bills.

"7. Your referee finds that the said W. G. McGoffin, referred to in the last paragraph above, also sold to the said estate, through negotiating the same with the respondent, certain other real estate belonging to a Mr. Culbertson, in which he, said McGoffin, agreed to pay respondent one-half of his brokerage if the sale went through. This transaction was conducted by the respondent for the guardian and said estate, and also went through. In this transaction the broker paid the respondent $800 for his fees and compensation. This likewise was paid in currency.

"8. Your referee finds that one W. M. Gulager, acting for himself and other parties jointly interested with him, during the year 1915 entered into negotiations with the respondent, as attorney for said guardian and said estate, for the purpose of selling to said estate, through said attorney and said guardian, certain farming lands located near Ft. Gibson, Oklahoma, the owners' price of the land for sale to said estate being at $125 per acre, and in the negotiations with the said respondent it was agreed that, if the sale went through at that price, respondent was to be paid $10 per acre as his fees or compensation. The respondent, acting for the guardian and for said estate, prepared the legal papers, did the legal work and obtained the necessary orders to invest the funds of said estate in these farming lands, but at a less price than the $125 per acre. That, after the sale went through and was cleaned up, said Gulager settled with the respondent by paying him $1,500 for his fees and compensation in the matter. There may be just a little uncertainty as to how this sum of money was paid, but it is reasonably certain it was also paid in cash.

"9. Your referee further finds that neither the guardian, nor Sarah Rector, nor the county judge, in whose court her affairs were being administered, were ever informed by the respondent, or knew that the respondent, while acting as the attorney for said guardian and said minor's estate, and conducting the proceedings in the county court for the investment of its funds in the real estate hereinbefore mentioned, was to have or receive, from the sellers of such property to said estate, secret fees or compensation whatever.

"10. Your referee finds: That on July 24, 1914, the respondent received from said estate, under orders of court, $600 as attorney's fees. That respondent petitioned for and was allowed and paid out of said estate December 18, 1916, $1,425 for services to said guardian and said estate, which payment included in compensation as petitioned for, for handling the purchase by the estate of the lands near Ft. Gibson, Oklahoma. That on August 26, 1915, the guardian petitioned for an order of court to be allowed to pay the respondent attorney's fees, reciting numerous services performed by respondent, including the purchase by the estate of the 'Fike lands,' and that on said date $1,500 was allowed and paid by order of court out of the funds of the said estate. That on August 5, 1916, the court allowed the guardian to pay respondent $1,500 for acting as attorney for the said guardian and said estate. That on May 21, 1917, the court allowed the guardian to pay said respondent $500 for conducting for the estate the 'Fish purchase' and $500 for the 'Dawes purchase,' said sums were paid. That on August 11, 1917, the guardian petitioned the court for authority to pay respondent, as attorney for said estate, $875 per month for the seven preceding months. On the same day the court made an order which apparently allows $875 for the seven months' services. Whether this sum was the total amount received under this order, or whether he received that much for seven months, I am unable to find.

"11. Your referee finds that, during the four years respondent was acting as attorney for the guardian of the estate of Sarah Rector, he received from the said estate, through orders of court for his services, the sum of $6,875; that during the same period, and in transactions in which he was attorney for the guardian and the said estate, he received from persons selling it lands the sum of $7,262.67; that during the same period, and while respondent was representing the guardian and the said estate, in loaning out its surplus funds, he received commissions and fees, from the persons borrowing them, the sum of approximately $1,200.

"12. Your referee finds that, up to the time of the commencement of the investigation which finally led to these disbarment charges, the respondent Edward Curd's reputation and standing as a citizen and a lawyer in Muskogee, Oklahoma, and vicinity, was good.

"13. In the answer and response filed in this case by the respondent, the claim is set forth that the respondent acted in good faith, under a custom that had grown up in Muskogee county and possibly some adjoining counties in this state, whereby, in the handling of minors' estates, it was customary for the attorney for the guardians and the minors to receive compensation from outside parties having dealings with the estates, and some effort has been made to establish this custom as a fact, and while it may be true that in numerous instances oil companies, in securing oil and gas leases on minors' lands, have paid the fees to the guardians' attorney for conducting the proceedings, yet, so far as I have been able to learn, this was always done open and above board, with the knowledge of the court and all parties concerned, and for the purpose of saving the proceeds of the lease intact to the estate; but I find there was no custom in Muskogee county, Oklahoma, whereby the attorney for a guardian could represent him in procuring the investment of the ward's funds in the purchase of real estate, and at the same time, without his knowledge or the knowledge of the court, receive large fees and compensation from the owner of the real estate, or his broker, who was attempting to get through the sale, and, if there was such a custom, its inherent vice and immorality would prevent its being operative or affording a shield for the attorney acting under it.

"Conclusions of Law.

"1. Your referee concludes as a matter of law that the conduct of the respondent in accepting the fees and compensations in the various transactions set out in the above findings, without the knowledge of his client, the guardian, or of the court through which the sales were being conducted, and while, at the same time, he was the attorney and adviser of the guardian and conducting the proceedings to accomplish the same and receiving or expecting to receive compensation from the estate, was a willful violation of his duties as an attorney and counselor.

"2. Your referee is of the opinion that such conduct is immoral and dishonest, and tends to degrade and bring under reproach the profession of attorney and counselor at law.

"3. Your referee is of the opinion that it is unsafe to risk any man serving two masters at the same time, whose interests are diametrically opposed one to the other. The relation of attorney and client is one of the highest trust and confidence. The guardian, in making the investments of his ward's funds in these various land transactions, had a right to rely upon the judgment and advice of his counsel, and that it would be given with an eye single to the interests of the estate, and without the slightest chance or hope of reward from any other source, which might rise up to blind the judgment or color the advice given.

"4. Your referee is of the opinion that the

attempt to show that the estate did not suffer any in these transactions, and that the lands bought were appraised by appraisers appointed by the court, and were worth the price paid for them, is no answer or justification for the respondent's conduct; nor does it answer or justify to show that he, said respondent, had been allowed too little compensation for his services to the estate by the court.

"Recommendation.

"Your referee recommends to the court that the respondent, Edward Curd, for and on account of his violation of his duties as an attorney and counselor at law and of his unethical and his unprofessional conduct in the practice of his profession, as above set out, should be disbarred and his license to practice law in the state of Oklahoma revoked.

"Respectfully submitted,
"P. D. Brewer, Referee."

In the brief filed by counsel on behalf of the respondent, it is stated that counsel do not desire to impress upon the court any particular objections to the findings of fact other than as to the mere matter of error in some of the detailed statements therein, and our examination of the record shows that the referee's findings are substantially correct. The defense made is as stated by the referee in paragraph 13 of the above findings, and since we are in thorough accord with the referee's views we deem it unnecessary to comment thereon. Under the third subdivision of section 252, Rev. Laws of 1910, the license of an attorney at law may be revoked for the willful violation of any of the duties of an attorney or counselor. We therefore adopt the findings of fact and conclusions of law of the honorable referee, and approve his recommendation, based thereon, that the respondent, Edward Curd, should be disbarred and his license to practice law in the state of Oklahoma revoked.

It is therefore ordered that the license heretofore issued by this court to the said Edward Curd be and the same is hereby revoked, and the said Edward Curd is disbarred from hereafter practicing law in the courts of this state.

KANE, HARRISON, PITCHFORD, JOHNSON, and McNEILL, JJ., concur. OWEN, C. J., not participating.